**UNITED STATES of America,
Plaintiff,**

v.

**Pavel LAZARENKO, Defendant.**

**No. CR–00–0284 MJJ.**

United States District Court,
N.D. California.

April 4, 2008.

---

Patricia Jean Kenney, Peter Benjamin Axelrod, United States Attorney's Office, San Francisco, CA, Matthew J. Jacobs, Peter J. Drobac, McDermott Will & Emery LLP, Palo Alto, CA, for Plaintiff.

## ORDER GRANTING PETER KIRITCHENKO'S REQUEST FOR RESTITUTION

MARTIN J. JENKINS, District Judge.

### INTRODUCTION

Before the Court is Peter Kiritchenko's request for restitution pursuant to 18 U.S.C. § 3663A and 18 U.S.C. § 3663(a). Kiritchenko contends that he was the victim of Lazarenko's extortion demands, as alleged in the Second Superceding Indictment, and that he made payments to Lazarenko in the amount of $30,000,000.00 (Thirty Million) and no less than $19,473,309.00, over the period of the extortion.[1] Defendant Pavel Lazarenko ob-

---

1. The minimum amount of restitution sought by Kiritchenko has changed during the pendency of this litigation. In his initial filing, Kiritchenko sought restitution in the amount of $17,363,309.00, calculated as follows:

$9,538,309.00, in payments made by Kiritchenko to Lazarenko identified by the Office of General Prosecutor in its February 2002 Resolution Declining to Initiate a Criminal Action

jects to Kiritchenko's request on a number of legal and factual bases as more fully discussed below.

George Niespolo, Esq. appeared on behalf of Peter Kiritchenko (hereinafter "Kiritchenko") and Doron Weinberg, Esq. appeared on behalf of Defendant Pavel Lazarenko (hereinafter "Lazarenko").[2]

The Court has reviewed the briefs submitted by the parties, the exhibits and testimony offered at the evidentiary hearings in this matter and the arguments of counsel. After careful consideration of the record in this matter, the Court hereby **GRANTS** Kiritchenko's request for the reasons set forth below.

## FACTUAL BACKGROUND

Lazarenko was charged in the Second Superceding Indictment with: conspiracy to commit Money Laundering, in violation of 18 U.S.C.1956(h) (Count One); money laundering in violation of 18 U.S.C. § 1956(a)2 and (a)1(B) (Counts Two through Eight); wire fraud in violation of 18 U.S.C. §§ 1343 and 1346 (Counts Nine through Thirty); and illegal transportation of stolen property in violation of 18 U.S.C. § 2314 (Counts Thirty One through Fifty Three). The Government generally asserted that Lazarenko, while a government official in the Ukraine, obtained property including money and ownership interests in certain companies, from individuals and entities and, inter alia, that he induced Kiritchenko, through threats, to transfer 50% of the profits from Kiritchenko's businesses to Lazarenko. With respect to the money laundering counts, the Indictment also alleged that Lazarenko conspired to and did, through the abuse of his public office, engage in money laundering wherein the specified unlawful activity involved fraud, transportation of stolen property and extortion of monies from Kiritchenko and others.

Trial commenced in this matter on or about March 15, 2004. In May 2004, at the close of the Government's case in chief, the Court granted in part, and denied in part, Lazarenko's motion for judgment of acquittal pursuant to Rule 29(a). Accordingly, the Court dismissed Counts Nine through Nineteen, Count Thirty and Counts Thirty–Two through Forty–Two of the Indictment. *See Docket no. 774.*[3] Thereafter, on June 3, 2004, the jury returned verdicts on the remaining counts and entered factual findings as more fully set forth below:

a. Guilty—conspiracy to commit money laundering and substantive money laundering (Counts One through Eight). The jury also made a factual finding that La-

Against Kiritchenko (hereinafter "GPOU Resolution") and $7,825,000.00 in profits paid to Lazarenko from Kiritchenko's partnership with Mitchum Associates. *Declaration of Dan Ray and Supporting Exhibits dated June 16, 2006.* On August 24, 2006, Kiritchenko submitted a letter brief to the Court seeking restitution in the amount of $18,823,209.00. The August 24th request identified an additional $1,460,000.00, in extortion payments made by Kiritchenko to Lazarenko. Finally, on November 9,2006, Kiritchenko's counsel, George Niespolo, submitted a declaration seeking additional restitution in the amount of $650,000.00 for extortion payments made by Kiritchenko to Lazarenko. The payments identified in the August 24th letter and the

November 9th declaration were the subject of Kiritchenko's April 7, 2004 trial testimony. *Declaration of George Niespolo in Support of Request for Restitution at Para. 4–5.*

2. Assistant Unites States Attorney, Peter Axelrod represented the United States in the criminal prosecution of Pavel Lazarenko. Mr. Axelrod appeared at the status conferences and evidentiary hearing pertaining to Kiritchenko's request for restitution and took the position that the Government neither endorsed or objected to Kiritchenko's restitution request.

3. On May 7, 2004, the Court also granted Defendant's Rule 29 motion as to Count 53. *See Docket no. 777.*

zarenko conspired to and did launder the proceeds of specified unlawful activity related to foreign extortion; *(See Special Verdict, Docket no. 812).*

b. Guilty—wire fraud (Counts Twenty through Twenty Nine). The jury also made a factual finding that Lazarenko had engaged in a scheme to defraud Ukranian citizens of their right to honest services relating to Kiritchenko, *Id.;* and,

c. Guilty—transportation of stolen property, (Counts 31 and Forty–Three through Fifty Two). The jury also made a factual finding that stolen property was derived from property extorted from Kiritchenko under threat of economic harm. *Id.*

Subsequent to his conviction, Lazarenko filed a renewed motion for judgment of acquittal pursuant to Rule 29(a) and a motion for new trial. On or about May 20, 2005, the Court granted in part and denied in part Lazarenko's motion for judgment of acquittal dismissing Counts 20–24, the stolen property counts with the exception of Count 31 and denied his motion for new trial. *(Docket No. 877.)*

Counts One, Two through Eight, conspiracy to engage in and substantive money laundering, Counts Twenty Five through Twenty–Nine, wire fraud, and Count 31, transportation of stolen property survived the Court's Rule 29 rulings.

Sentencing in this matter required the resolution of a number of novel and complicated legal/factual issues and, as such, the hearing was continued for several months. A sentencing hearing was held on August 25, 2006. Lazarenko filed his Sentencing Memorandum on or about August 4, 2006 *(Docket No. 991 )* and the Government filed its Sentencing Memoran-

dum on or about August 11, 2006 *(Docket No. 1031.)* On or about August 15, 2006, Kiritchenko filed with the Court a memorandum in support of his request for restitution from Lazarenko.[4]

On August 25, 2006, after full consideration of all issues pertaining to sentencing in this matter, the Court sentenced Lazarenko to a total term of 108 months in prison and a term of supervised release. The Court requested supplemental briefing regarding Kiritchenko's request for restitution and continued the matter for restitution hearing. Pursuant to the Court's request for further briefing, on September 7, 2006, Lazarenko filed an opposition to Kiritchenko's August 15, 2006 request for restitution and, on September 14, 2006, Kiritchenko filed his reply *(Docket Nos. 1058 and 1064).* On November 15, 2006, the Court conducted the first of several hearings regarding Kiritchenko's request for restitution. At the conclusion of the November 15, 2006 evidentiary hearing, the Court informed the parties that it would rule on the legal challenges raised by Lazarenko to the request for restitution and, depending upon the Court's ruling, conduct an evidentiary hearing allowing the parties to present live witness testimony and exhibits relevant to Kiritchenko's restitution request. On or about December 8, 2006, the Court filed its Memorandum and Order overruling several legal objections tendered by Lazarenko to Kiritchenko's request for restitution *(Docket No. 1109).* Thereafter, on May 1, June 6, and November 15, 2007, the Court conducted evidentiary hearings and heard final argument pertaining to Kiritchenko's request for restitution. The matter is now ripe for resolution.

---

4. Lazarenko filed with this Court letter briefs dated August 15, 22 and 24, 2006, addressing, in part, issues pertaining to Kiritchenko's request for restitution. Kiritchenko submitted a letter brief dated August 24, 2007, in response to Lazarenko's letter briefs. The Court has also considered each of these filings in resolving the issues raised by Kiritchenko's request for restitution.

## LEGAL STANDARD

Kiritchenko's request for restitution is governed by two statutory enactments. 18 U.S.C § 3663A (hereinafter "MVRA") mandates that the court shall order ... the defendant make restitution to the victim of the offense. 18 U.S.C. § 3663A (a)1. The MVRA includes within its definition of the term victim, those persons directly or proximately harmed as a result of the commission of an offense including, in the case of an offense that involves as **an element a scheme, conspiracy or pattern of activity, any person directly harmed** by defendant's criminal conduct in the course of the scheme, conspiracy or pattern .... 18 U.S.C. § 3663A(a)2 (emphasis added). The MVRA applies in all sentencing proceedings for convictions of ... an offense against property under this title ... including any offense committed by fraud or deceit. Alternatively, 18 U.S.C § 3663(a)(1)(A) (hereinafter "VWPA") affords the Court discretion to enter an order of restitution for offenses under Title 18 that are not offenses against property or committed by fraud or deceit. However the VWPA requires that the court consider the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependants and other factors as the court deems appropriate. 18 U.S.C. § 3663(a)(1)(B). With this legal framework in mind, the Court now turns to the question of what, if any, restitution Kiritchenko is due.

## ANALYSIS

■■■ As indicated above, Lazarenko raised a number of legal challenges to Kiritchenko's request for restitution. The Court ruled on these challenges in its Memorandum and Order dated December 8, 2006, but summarizes its previous rulings here. First, the Court rejected Lazarenko's contention that the trial record establishes that Kiritchenko is not a victim within the meaning of MVRA and/or the VWPA. The Court also rejected Lazarenko's assertion that Kiritchenko's restitution claim was limited to the counts of conviction and, as such, no claim could be made for monies transferred from Paddox Industries' accounts for the benefit of Lazarenko. Finally, the Court ruled that the determination of restitution was not of such complexity that the need to provide restitution was outweighed by the burden associated with determining restitution in the context of the sentencing process. *(See Memorandum and Order, dated December 8, 2006, Docket No. 1109.)* In rejecting Lazarenko's legal challenges, the Court specifically reserved ruling on credibility and reliability challenges raised by Lazarenko and afforded both parties a chance to augment the record at the evidentiary hearing. The Court conducted several evidentiary hearings and admitted exhibits tendered by Kiritchenko and Lazarenko.

■■■ Having reviewed the record and exhibits tendered by the parties, the Court first addresses Kiritchenko's request for restitution in the amount of $30,000,000.00. The Court finds that Kiritchenko has not established, by specific and reliable evidence that he is entitled to an award of $30,000,000.00. The Court reaches this conclusion for several reasons. First, while Kiritchenko testified at trial that the total amount of payments made to Lazarenko, as a result of the extortion, was approximately $30,000,000.00, he has failed to submitted sufficient evidence (i.e., bank records or the like) that support an award of restitution in this amount. The record does not disclose the specific amounts nor the dates of transfer to substantiate his claim for $30,000,000.00. Moreover, Kiritchenko's reliance on the jury verdict to establish a restitution award of this stature is misplaced as the jury did not make a

specific finding as to the **amount** of money involved in Lazarenko's extortion of Kiritchenko. *United States v. Swanson,* 394 F.3d 520, 525–526 (7th Cir.2005). Therefore, on this record, the Court finds that an award in the amount of $30,000,000.00 has not been established by a preponderance of the evidence.

█ Having rejected Kiritchenko's request for an award of $30,000,000.00, the Court now turns to evaluate the record regarding his request for an award of $19,473,309.00. Here, unlike Kiritchenko's request for $30,000,000.00, the record supports his request for $19,473,309.00, based upon his submission of specific and credible evidence namely; his testimony given during the course of the evidentiary hearings, his testimony given at trial in April 2004, the GPOU Resolution, prepared by the Office of the General Prosecutor of the Ukraine dated February 14, 2002, summaries of disbursements from and into various accounts prepared by FBI Special Agent Tonna (See *Kiritchenko Restitution Hearing Exhibits 1–5* ) and the affidavits of Dan Ray, George Niespolo and Kiritchenko. The totality of the evidence before the Court is more than sufficient to provide a credible and reliable basis to support Kiritchenko's request. For example, Dan Ray, a certified public accountant, former FBI Agent and Forensic Consultant, reviewed each of financial transactions identified by Kiritchenko during the latter's interview before the GPOU in February 2002, and located corresponding disbursements from Kiritchenko's accounts to accounts held for the benefit of Lazarenko in the amount of **$9,538,309.00.** Dan Ray, also reviewed bank records with Kiritchenko and documented transfers from Mitchum Associates to Paddox Industries to accounts held for the benefit of Lazarenko in the sum of $16,650,000.00, half of which (**$7,825,000.00)** Kiritchenko testified was remitted to Lazarenko as a result of extortion demands. *(See Affidavit of Dan Ray,*

*dated June 16, 2006, Exhibits C, D and E.)* The GPOU's Resolution also provides an additional measure of reliability in support of Kiritchenko's claim. *(Affidavit of Dan Ray, dated June 16, 2006, Exhibit B.)* Moreover, Kiritchenko submitted excerpts of his trial testimony, given on April 2004, wherein he identified transfers in the amount of **$1,460,000.00 and $650,000.00,** as profits from his business enterprises that he deposited into accounts maintained for the benefit of Lazarenko. *(See Decl. of George Niespolo and Exhs. A and B, attached thereto).*

Therefore, there is ample evidentiary support for Kiritchenko's request for restitution in the amount of $19,473,309.00.

Lazarenko's fact based challenges focus largely on Kiritchenko's credibility. For example, Lazarenko argues that the February 2002, GPOU Resolution does not reference payments from Paddox Industries to Lazarenko controlled accounts and the absence of these references establishes that Kiritchenko never made payments from Paddox Industries' accounts as a result of extortion demands. Lazarenko also draws the Court's attention to Kiritchenko's deposition testimony, given in the matter of *Universal Trading & Investment Company v. Petro Kiritchenko, United States District Court No: 99–3073,* wherein Kiritchenko testified that he did not recall making transfers from Paddox Industries accounts to Lazarenko's daughter, Tamara Lazarenko; that he did not recall making monetary transfers from his Orphin account into his Paddox account; that he did not know who owned Mitchum Associates and was equivocal with respect to the types of goods Paddox sold to Mitchum Associates, the existence of contractual agreements between Paddox and Mitchum Associates and his recollection of money being transferred from Mitchum

Associates to Paddox Industries. *(Def's Exh. F.)*

The Court has reviewed each of Lazarenko's challenges to Kiritchenko's credibility but finds that the evidence supporting Kiritchenko's request for restitution is reliable for several reasons. First, Lazarenko's evidence does little to undermine the payments identified by the GPOU's Report of February 2002, which were corroborated by Daniel Ray's review of the relevant bank records. Moreover, while it is true that Kiritchenko was equivocal with respect to his knowledge of the ownership of Mitchum Associates, and several specific payments flowing from Mitchum into Paddox accounts and ultimately to Lazarenko, Kiritchenko also testified at that same deposition that he (Kiritchenko) had a business relationship with Mr. Grigorishin of Mitchum Associates. As importantly, Kiritchenko also testified during the same deposition that he and Mr. Grigorishin joined forces, through Mitchum Associates to supply energy to enterprises and thereafter would take goods, sell them and split the profit from these transactions in half. *(Defendant's Exhibit F.)* Additionally, during the evidentiary hearing in this matter, Kiritchenko testified that in 1994–1995 time frame he was involved in the acquisition of energy from nuclear waste plants and, at some point, he joined forces with Mr. Grigorishin in the acquisition of energy to sell to power plants in return for the receipt of metals. The metals received in return for supplying energy to power plants would be sold through Kiritchenko's Orphin account with the assistance of Mitchum Associates. Kiritchenko further testified that the deals involving the acquisition and sales of energy were in the tens of millions of dollars and that he (Kiritchenko) paid half of the profits realized on these sales to Lazarenko. *(Defendant's Exhibit F.)* In the Court's view, while Kiritchenko may not have been fluent with respect to the ownership of Mitchum or the scope of its business endeavors he has consistently and credibly identified the source of the amounts paid to Lazarenko from his energy supply business and the Court finds him credible.

Lazarenko also points to a disbursement from the Paddox account to Tamara Lazarenko that exceeds 50% extortion demand made by Lazarenko and he posits that transfers out of the Paddox account total 11.8 million dollars, a figure inconsistent with Kiritchenko's claim that 15 million dollars of profit were deposited into the Paddox account. Lazarenko contends that the evidence establishes that Kiritchenko was, in fact, involved in a partnership with Lazarenko and that the deposits into the Paddox account for the benefit of Lazarenko were the proceeds of legitimate business activities. The Court disagrees. As Kiritchenko testified during the restitution hearing, he employed the "pocket theory" in making extortion payments to Lazarenko and accordingly, Kiritchenko would make payments out of several accounts to meet the 50% extortion threshold. Therefore, Kiritchenko's inability to trace every dollar deposited, withdrawn and/or payments made to third parties from the Paddox accounts does not undermine the reliability of the amount of restitution sought here.

Finally, the Court also notes that the jury in this matter found Kiritchenko credible in rendering its verdict of guilt with respect to the counts of conviction for money laundering and made specific findings that Lazarenko engaged in foreign extortion and transportation of stolen property with a specific finding that the stolen property was derived from property extorted from Kiritchenko. This finding, while not dispositive of the credibility issues now before this Court, supports the Court's finding that Kiritchenko is entitled to restitution in this matter. Therefore,

the Court finds that Kiritchenko has satisfied his burden of establishing by a preponderance of the evidence his entitlement to restitution in the amount of $19,473,309.00.[5]

## CONCLUSION

For the foregoing reasons, and pursuant to 18 U.S.C. § 3663A and 18 U.S.C § 3663(a), the Court **GRANTS** Kiritchenko's request for restitution in the amount of $19,473,309.00.

**IT IS SO ORDERED.**

---

**5.** The record evidence does not support a finding that Mr. Lazarenko lacks the requisite financial ability to preclude an order of restitution under VWPA and no objection has been tendered to the Court on this ground.